## VÍAS *v.* SUCCESSION OF PÉREZ.

### APPEAL from the District Court of Humacao.

No. 657.—Decided June 24, 1911.

ENTRY OF DEFAULT—SUMMONS OF DEFENDANT—DEFENDANTS IN DIFFERENT CAPACITIES.—The summons and a copy of the complaint having been personally served on a defendant, the requisites of law for a court to acquire jurisdiction of his person are complied with, and the fact that he is sued in different capacities does not require that a summons be served in each capacity. His default having been entered, it is proper to dismiss his answer to the complaint filed after the entry of default.

PARTNERSHIP—CONTRIBUTION OF PRODUCTS OF INDIVIDUAL PROPERTIES.—The products of the individual properties of each partner having been contributed to a partnership, but not the usufructuary rights that may be had in the property of another, it is unnecessary to allege in the complaint that a public instrument establishing the partnership had been executed, for such requisite is only required by section 1569 of the Civil Code where real property or property rights are contributed by any of the partners.

ID.—FORMATION OF PARTNERSHIP UNDER PUBLIC INSTRUMENT—CLAIMS AMONG PARTNERS.—Even in the presumption that a partnership must be formed by means of a public instrument, this requisite would be indispensable in order to sue a third party, but not to prosecute claims among the partners themselves, because so far as the partners are concerned the contract has full legal effect even in the absence of such formality.

PRIVATE CIVIL PARTNERSHIP FOR PROFIT.—The allegations made in the complaint prove the constitution of a private civil partnership for profit as the object thereof is to share the profits that certain properties may yield, and no facts appear therein from which it may be inferred that the purpose of the partnership was to engage in commercial pursuits.

ID.—PARTNERS UNDER AGE—CIVIL PARTNERSHIP.—The provisions of article 4 of the Code of Commerce, requiring that persons engaged in commercial

pursuits shall be 21 years of age, are not applicable to civil partnerships, since there is no provision in the Civil Code barring duly represented minors from forming part of civil partnerships.

ID.—ESTABLISHMENT OF CIVIL PARTNERSHIPS—REPRESENTATION OF PARTNERS UNDER AGE.—It is not an indispensable requisite in establishing a civil partnership that those of its members who are under age be represented by a defensor, because only where the father's interests conflict with those of his son will it be necessary that the latter be represented by a defensor, and in the case at bar there are no conflicting interests.

ID.—JUDICIAL AUTHORIZATION.—Judicial authorization for a minor to form a civil partnership such as the one under consideration in this suit, is not necessary, because it is not sought to alienate or encumber real property.

ID.—ACKNOWLEDGMENT OF DEBT BY FATHER OF MINOR—JUDICIAL AUTHORIZATION—LIQUIDATION OF PARTNERSHIP.—Where a father acts in his own right and in representation of his minor children as a member of a partnership his acknowledgment of a debt of the said partnership binds those whom he legally represents. To secure judicial authorization on the ground that the acknowledgment is the result of a liquidation of partnership made by himself in his own right and on behalf of his minor children is not an indispensable requisite for the acknowledgment of the debt. In accordance with section 1027 of the Civil Code, which according to section 1610 thereof is applicable to the liquidation of civil partnerships, judicial approval is unnecessary in such cases.

APPELLANT'S BRIEF—ASSIGNMENT OF ERRORS—CITATION OF THE LAW INFRINGED.—The appellant in assigning in his brief the errors which he believes were committed by the court below should cite the law violated, otherwise, in accordance with rule 43 of the Rules of the Supreme Court, the alleged errors may be disregarded by this court.

LIQUIDATION OF PARTNERSHIP—LIQUIDATION MADE BY ONE PARTNER.—The liquidation made by one partner and accepted by the other is the liquidation of both.

The facts are stated in the opinion.

*Mr. Francisco Socorro* for appellants.

*Mr. Juan Vías Ochoteco* for respondents.

MR. JUSTICE ALDREY delivered the opinion of the court.

The sworn complaint of the plaintiff in this case, filed in the District Court for the District of Humacao on April 23, 1908, against the estate of Isabel Pérez Sánchez, composed of her widower, Francisco Busó Cabrera, and of her children, Francisco, Poncio, and Julio Busó Pérez, and also against Busó Cabrera as the heir of his other son, Oscar Pablo Busó Pérez, substantially alleges:

1. That in January, 1903, the plaintiff, and Francisco Busó Cabrera, who acted in his own behalf and as the legal repre-

sentative of the Succession of Isabel Pérez Sánchez, composed of her three minor children, the defendants herein, and also of another son named Oscar Pablo, who died after his mother, verbally agreed to form a partnership for the cultivation of cotton on a property belonging to said Succession.

2. Under this agreement the plaintiff, Vías, was to advance the money to pay the weekly wages and general expenses, which would be reimbursed him at the end of each harvest, it being further agreed that the property should be appraised so that upon payment by the plaintiff of one-half of the value thereof ownership should pass to the firm of Vías & Busó.

3. According to the agreement and because a mortgage weighed on the property, the plaintiff delivered to Francisco Busó Cabrera the sum of $165, which was half of the amount necessary to satisfy an instalment due, which, by adding an equal amount thereto, Busó paid.

4. In the following month, February, 1903, wishing to extend their business, they agreed that the plaintiff should buy another similar property adjacent to theirs. Such purchase he made from Mr. Valdejuli under deed of the 9th of same month and year.

5. Because of the lack of resources of the Succession of Pérez they also agreed that each property would continue to belong to its respective owner and that the partnership would continue only with a view to securing greater advantages in the cultivation of cotton and other crops; and it was only under this condition that the plaintiff placed his property, free from all liens for which the partnership might be held responsible, at the disposal of Busó. That the stipulated price of the property acquired by Vías was paid by the latter out of his own private funds, and that thenceforth the Succession of Pérez should have repaid him the $165 which he had advanced to them.

6. The plaintiff alleges that he punctually paid to Vías & Busó all the money which they needed for the agricultural

enterprise up to September, 1905, when the partnership was dissolved, and that he never received any profits, but, on the contrary, had to pay interest on the sums advanced by him.

7. That the books of the partnership were kept by Busó Cabrera in his own right and as representative of the Succession of Pérez, said books showing at the time of the dissolution a balance in favor of the plaintiff of $5,471.63, of which Busó himself acknowledged that he owes $1,207.61.

8. That in June, 1903, Busó Cabrera and his children, represented by a defensor, liquidated the estate left by Isabel Pérez without taking into account the partnership existing since January, 1903, which they did not liquidate, for the purpose of ascertaining the true value of the property they contributed to the partnership and the result of the latter, the property having been adjudicated to Busó Cabrera for $2,500, notwithstanding that the same had been improved with funds of the plaintiff furnished to Vías & Busó. In regard to such adjudication, the plaintiff was not consulted and neither did he consent thereto.

9. That the whole or the greater part of the sum claimed was expended in improving the property of the Succession of Pérez, the value of which was thereby increased by more than $1,000.

10. That during the first days of the month of September, 1905, before the dissolution of the partnership, Busó Cabrera pulled up 130 cocoanut palms from the property of the plaintiff and transplanted them to his own, thus causing him damages to the amount of $150.

11. That he had previously filed a suit for $1,772.61, which is the amount the defendants really owed, but that in order to simplify his claim he withdrew that complaint and reduced the same to the amounts now mentioned.

12. That under the present complaint he claims $1,522.61, plus legal interest for two and a half years, which amounts to $235.91, and also that which has subsequently accrued.

The paragraph of the summons issued in this case wherein the parties defendant are mentioned states the following:

"To the Succession of Isabel Pérez Sánchez composed of her husband, Francisco Busó Cabrera, and of her minor children, Francisco, Poncio, and Julio Busó Pérez, and to Francisco Busó as the heir of his deceased son, Oscar Pablo Busó Pérez, all of them represented by Busó Cabrera—that is, the defendants hereinbefore mentioned."

The marshal's return shows that he personally served Franciso Busó Cabrera with notice of the complaint, both in his individual capacity and as the representative of the Succession of Isabel Pérez, and that he also delivered to him a copy of the summons and of the complaint.

At the request of the plaintiff and after the period allowed to the defendants to appear had elapsed, the secretary of the court entered default against them and later a judgment was entered against all of them, the same having been reversed on appeal by this Supreme Court, which also annulled the entry of default made against the defendant minors, although allowing said default to remain in effect as to the defendant Busó Cabrera.

Subsequently to this, the defendant, Busó Pérez, filed a writ of demurrer and answer, Busó Cabrera having done likewise some time later. At the commencement of the trial, the court overruled the demurrer of the former and disregarded that of the latter on account of his default.

The grounds of the demurrer filed by the Busó Pérez children were that the complaint did not state facts sufficient to constitute a cause of action, and the ambiguity of the same.

The answer filed by the Busó Pérez brothers, which was sworn to by one of them, only admitted that the plaintiff and Busó Cabrera, the latter on behalf of the Succession of Isabel Pérez of which they form part, formed an agricultural partnership, and the eleventh and twelfth allegations of the complaint, namely, that another complaint was formerly filed and the amounts which are now claimed. In opposition they

asserted that the partnership contract would expire whenever the partners should so agree; that the property of the Succession would pass to the ownership of the firm upon payment by the plaintiff of one-half of its value, which amount would be credited to him, and on account of which Vías would advance the money for the weekly expenses; that the amount due to Vías would be paid from the proceeds of the crops, the net balance to be shared in equal portions; that Busó Cabrera would be the manager at such monthly salary as might be agreed upon by them; that Vías would draw up a memorandum for the public deed of partnership; that the $165 which Vías delivered and now claims was paid in part payment of his half; that the Valdejuli property was purchased by the firm under an agreement entered into by both partners, and is not the private property of plaintiff; that Vías only advanced a minimum sum for cultivation purposes, and when he ceased making such advances on account of lack of funds he advised Busó Cabrera to borrow a large sum of money from Cecilia Pérez and Natividad Rosado, all of which was used for cultivation, and was later reimbursed by Busó Cabrera from his own private funds because Vías failed to make the payment; that Vías has only terminated the partnership, but that it is not dissolved; that when liquidating the Pérez Succession, the property contributed to the firm was adjudicated to Busó Cabrera, made with his knowledge and without his objecting; and that the money furnished by Vías was invested in the cultivation of both properties, which was extended to cotton and other products, as cocoanuts and oranges, not the property contributed by the Succession but that acquired from Valdejuli having been improved.

The trial of this case was had upon the above allegations, and on August 16, 1910, the court below rendered a judgment, which was entered on the same day, declaring that the law and the facts were in favor of the plaintiff and against the defendants as members of the Succession of Isabel Pérez, and

also against Francisco Busó Cabrera, who was declared in default; and judgment was also rendered against him, ordering the defendant to pay to Juan Vías Ochoteco the sum of $1,522.61 as principal and $235.91 as interest, plus interest on the first-mentioned sum from April 23, 1908, until it was fully paid, and the costs incurred.

An appeal from this judgment having been taken in due time and manner by all the defendants, a transcript of the record, a statement of the case, and an assignment of errors were filed, and the parties also made their oral arguments, the plaintiff personally and the defendants through counsel.

Prior to citing the facts brought out by the evidence, we shall refer to and decide the grounds of error based upon the allegations.

It is alleged that the court below violated paragraph 6 of section 93 and section 96 of the Code of Civil Procedure in declaring that the sworn answer of the defendant, Francisco Busó Cabrera, as the heir and only member of the Succession of his son, Pablo Busó Pérez, was improper and that it should be considered as not having been filed, the reason of the court for so finding being that said defendant had been declared in default by the Supreme Court for all the legal purposes of this suit.

The first section said to have been violated prescribes the manner in which summons must be served on the defendants, paragraph 6 establishing the general rule, that is, that it must be served on the defendant personally—the five preceding paragraphs dealing with the manner in which a summons must be served where the suit is against a domestic or a foreign corporation, against a minor under the age of 14 years, against a person of unsound mind, against the Government of Porto Rico, or against any municipality.

Section 98 says:

"From the time of the service of the summons and of a copy of the complaint in a civil action, where service of a copy of the complaint is required, or of the completion of the publication when

service by publication is ordered, the court is deemed to have acquired jurisdiction of the parties, and to have control of all the subsequent proceedings. The voluntary appearance of a defendant is equivalent to personal service of the summons and copy of the complaint upon him.'' (Laws of 1904, p. 213.)

The appellant, Busó Cabrera, maintains that since he has not been summoned as the heir of his son, Oscar, he cannot be declared to be involved in the entry of default, because in such capacity neither the district court nor the Supreme Court has acquired jurisdiction over his person, excepting when in that capacity he filed his sworn answer.

According to the return, the said defendant was personally served with a summons and with a copy of the complaint, which is all that the law requires in order that it may be considered that the court has acquired jurisdiction over his person, and the fact that he has been sued in different capacities does not require that he should be summoned in each capacity, for which reason the entry of default against him was proper, and the district court and this Supreme Court have acquired jurisdiction over his person, his answer having been properly dismissed because it was filed after the entry of default.

On the other hand, this Supreme Court has already held, on December 4, 1909, that the default entered in this suit against Busó Cabrera was not a nullity and that it should be sustained, wherefore it must be understood that he is in default for all the purposes of the suit, because if this were not so the court would have made the distinction sought by appellant.

The second error assigned is that the first demurrer filed by the defendants Busó Pérez having been overruled, the complaint did not state facts sufficient to constitute a cause of action.

This allegation is maintained by them on the following grounds:

(a) Because, according to the complaint, this case involves

a partnership constituted for an unlimited time, to which was contributed the real usufructuary right, which should have been set forth in a public instrument, and that since this does not exist the parties cannot enforce among themselves the obligations arising therefrom without first executing the instrument.

(*b*) Because as it appears from the complaint that the case involves a partnership partaking to a certain extent of both a civil and a mercantile character, and under both aspects with a collective nature, it is void under all circumstances, because, considered civilly, the partnership appears to have been made with minors represented by their father, and, considered commercially, persons under 21 years of age are excluded from business pursuits.

(*c*) Because if minors can form civil partnerships this one would be void, because the minors were represented by their father notwithstanding that his interests conflict with theirs.

(*d*) Because the father could not contribute to the partnership the usufructuary right of his children without judicial authorization, which he did not have.

(*e*) Because the complaint states that according to the books the amount owed to the plaintiff was $5,471.62, of which Busó Cabrera acknowledged that he owed $1,207.61, but it does not state, although it is necessary so to do, that a liquidation of the partnership was made and a balance of each member's account struck, whether there were any losses, and if upon a distribution thereof among the partners the plaintiff was found to be a creditor of the other partners for the aforesaid $5,471.62.

Most of the grounds of the demurrer are based on the erroneous supposition that the father, without judicial authorization, contributed to the firm of Vías & Busó a real usufructuary right belonging to his minor children.

No such thing appears from the complaint, but it does show that the Succession of Pérez, represented by Busó Ca-

brera and the plaintiff, each contributed a farm to the partnership they formed, each one reserving to himself the ownership thereof, their only purpose being to engage in the cultivation of cotton and to distribute the profits which they might make after deducting therefrom the money which Vías was under obligation to furnish.

The Succession of Isabel Pérez contributed to the partnership no real usufructuary rights which they had to the property of another, nor any real property, and therefore it was unnecessary for the complaint to allege that a public deed of the organization of the partnership had been executed, because this is only required by section 1569 of the Civil Code where any of the partners contribute real property or real rights to the partnership. The contribution consisted of the products of properties belonging to them, but not of the ownership or usufructuary rights had in the property of another.

But even though the public instrument had been necessary, it would be indispensable in claims against third parties, but not in claims among the partners themselves, because so far as these are concerned the contract is sufficient for all legal purposes, even though that formality is lacking. (Judgment of the Supreme Court of Spain of May 3, 1897; July 4, 1899; July 1 and October 19, 1901.)

The language of the complaint shows that a civil partnership of profits had been formed because it had for its object the distribution of such profits as certain properties might yield, and there is no statement made therein from which it may be inferred that its object was to engage in commercial transactions.

The provisions of article 4 of the Code of Commerce, which require that persons who engage in commercial pursuits must be 21 years of age, are not applicable to civil partnerships, even though these may adopt or be vested with some of the forms recognized by the Code of Commerce, because under section 1572 of the Revised Civil Code such provisions are applicable in cases of that nature so far as they do not

conflict with the provisions of the Civil Code. And since there is no provision whatever in this latter code barring minors who are properly represented from forming civil partnerships, the provisions of article 4 of the Code of Commerce cannot be applied, because it would impede the exercise of a right conferred by the Civil Code.

It was unnecessary for the complaint to allege that the minors were represented by a defensor in the partnership agreement, because this was not necessary, and it is compulsory only where the father has interests which conflict with those of his children. The interests of the father and of the children were not conflicting for the reason that the end sought by them was to render productive a property belonging to them, and this was a common and equal, not a conflicting, purpose.

It was also unnecessary to allege judicial authorization to form this partnership, because it was not sought to sell or encumber real property, which are the only cases where, under section 229 of the Civil Code, that authorization is required.

The complaint finally alleges that the partner, Busó Cabrera, who is at the same time the legal representative of his minor children, acknowledged that he owed to the plaintiff, according to a liquidation made by himself, the amount of $1,207.61, which is claimed together with other items. On the strength of this allegation there is a cause of action against Busó Cabrera and against all the minor defendants, because the latter being represented in the partnership by their father the acknowledgment of the debt by him as in the partnership he acted in his own right and in representation of his children, is also an acknowledgment by those whom he legally represents, because their lack of capacity is supplied by that of the father.

Moreover, to acknowledge said debt, the father did not need judicial authorization, because it was the result of the liquidation of partnership made by him on his own behalf and

on behalf of his minor children, in which case he did not need the approval mentioned in section 1027 of the Civil Code, which, according to section 1610 of the said code, is applicable to the liquidation of civil partnerships.

Therefore, the first demurrer to the complaint was properly overruled.

The third error is based on the overruling of the ground of ambiguity, which is founded on the fact that on the one hand the plaintiff states that the partnership owed him $5,471.63 and that in another complaint, which he withdrew, he claimed $1,772.61, and that, according to the present complaint, he claims only $1,522.61, which raises the doubt in the minds of the defendants as to whether a true and just liquidation was made.

No ambiguity exists in the complaint, because it is explained therein that the books show a balance of $5,471.63 in favor of the plaintiff, of which amount Busó Cabrera has only acknowledged that he owes $1,207.61, which is the amount claimed together with two other items, which raise the latter figure to $1,522.61, and although in a former complaint the plaintiff claimed $1,772.61, in the present complaint he reduced his claim in order to make it easier. This point requires no further consideration.

In order to consider the other errors assigned it is necessary for us first to examine the result of the evidence introduced at the trial, which establishes the following facts:

In January, 1903, Juan Vías Ochoteco, in his own right, and Francisco Busó Cabrera, in his own right and as representative of the Succession of his deceased wife, Isabel Pérez Sánchez, composed of himself as the widower, and of his children, Francisco, Poncio, and Julio Busó Pérez, and also of Busó Cabrera, as the heir of his deceased son, Oscar Pablo Busó Pérez, made a verbal agreement to plant and cultivate cotton on a property belonging to the said succession situated in the Playa of Humacao.

The conditions upon which the agreement was made were that the plaintiff, Vías Ochoteco, would furnish the money for the weekly expenses incurred in the cultivation of that property on condition that he would reimburse himself for the money he advanced at the end of each crop, and that upon an appraisal of the property and payment by Vías Ochoteco of one-half thereof, ownership of the property would pass to Vías & Busó, which was the firm name adopted by them.

As a consequence of this agreement and as the property was mortgaged to the Banco Territorial y Agrícola, Vías Ochoteco, in order to effect the payment of one of the instalments then due, gave to Busó Cabrera $165, which amount, added to a like sum furnished by the Succession of Pérez, was used to meet that obligation.

Shortly afterwards it was agreed by the parties, with a view to the extension of the business, that the partnership should have and should operate two properties: that of the Succession of Pérez and another similar and adjacent property which belonged to Sandalio Valdejuli, from whom Vías Ochoteco acquired it according to a public deed executed on February 3 of the same year, paying one-half of the purchase price in cash and giving a mortgage for the balance, which the plaintiff also paid in the following year.

In this modification of the contract it was agreed that each party should retain the ownership of his respective property, the partnership to continue with respect to the cultivation only, and under the former condition that Vías Ochoteco was to furnish the wages.

The result of the business did not correspond to the hopes entertained by the contracting parties, and two years later, on September 11, 1905, Busó Cabrera wrote to the plaintiff a letter, from which we copy the following paragraphs:

"* * *. With the $2,500, in round numbers, which papa did not want me to invest, giving him the interest thereof, I would have been able to pay off the amount that I appear as owing from the liquidation of Vías & Busó. * * *.

"Under such conditions it is impossible for me to do as you wish. But even if at the present moment I am unable to settle my account with you, I am willing to give security for the balance which I may appear to owe, the same to be payable with interest on a date which will not oblige me to sell at a sacrifice and lose the fruits of my labors of several years. Up to Saturday last, the 9th instant, the debit of the property account amounts to $8,970.10 and the credit to $3,498.47; therefore, the partnership owes $5,471.63. According to the accounts in Janer's books, the amount paid by you in cash on various dates from January to June, 1903, is $3,358.66, of which you disposed of $295.24, the balance being $3,063.42, which sum was invested in the cotton business. To this amount must be added $880 paid for oxen which you purchased from Sáez, therefore, barring any involuntary omission or error, you disbursed in the cotton business $3,943.42. The amount owed by the partnership is $5,471.63, but as I have paid $1,528.21 and in order to cover the 50 per cent, I owe $1,207.61. Should you be unable or should you not desire to come to see the book, I will send it to you so that you may examine it and check the entries, and should you not wish to continue the partnership, we can dissolve it and I will guarantee payment to you. Yours truly, (signed) Francisco Busó Cabrera."

From the answer to this letter given by the plaintiff on the following day, the following paragraphs are transcribed:

"Therefore, I accept your proposition and we will proceed to liquidate the outstanding accounts of our partnership in order to determine the amount that should be guaranteed according to your proposition. * * *.

"With regard to the liquidation which you make in your letter, I have doubts which could only be dispelled if, as promised by you, you send me the account book for examination. The doubts that I have arise, in my opinion, and as you yourself state, from the fact that you have only taken into consideration the amounts which I invested in the property through the commercial house of José S. Janer, the fact being that some weeks it was necessary, on account of the lack of funds of said business house, for me to make up the amounts which were to be invested in the cotton business out of funds existing in my own house. Moreover, you should remember that through Mr. Pedro Aldrey I once remitted to you from San Juan $200 in cash, which sum was delivered to you directly without the intervention, so far as I know, of Mr. Janer. On the other hand,

you will also remember that I likewise contributed to the payment of an instalment of the mortgage constituted upon the property at the Playa at the time when we had another deal in mind by which half of your property was to be acquired by me, and that later I decided to purchase the Valdejuli property, for which reason the payment made by me, which, if I rightly remember, amounted to $165, including interest, should be paid back to me in full when we liquidate the accounts. I have no doubt that after having exchanged our views we shall arrive at an understanding eliminating the errors which may have been incurred. In order to obtain the result, I beg you will be good enough to send me your books at the earliest opportunity so that I may have a basis upon which to work. With respect to the dissolution of our partnership, I have no objection in considering it as dissolved * * *. I beg you to tell Luis to come around and have a talk with me in regard to the condition of my property and to decide with me as to whether or not he is going to continue in charge of the same.''

This important letter was answered in the following manner:

''Punta de Santiago, Sept. 13, 1905. Mr. Juan F. Vías, Humacao. My distinguished friend: This morning I received your letter of yesterday, whereupon I immediately collected all the weekly pay rolls and sent word to Luis Ferrer to go and see you at noon, taking the book and the lists with him. In my previous letter I suggested to you a liquidation of the partnership because I understood such was your desire, but although this is not a good opportunity since from this time on the products will cover expenses, pay interest on the money, and at no distant date will cover the amount invested, as it is your desire, I will not offer any opposition. I do not recollect the remittance of $200 made through Mr. Pedro Aldrey, but what you say is sufficient to convince me that either through Janer or by payments made directly by me they were invested in the property. I believe you are in error in regard to the $165 which you said you paid to acquire half of my property at the playa. The instalments that I had to pay amounted to $300. However, perhaps it is I who am in error, and if you will tell me the date on which the payment was made I will look it up in my books and may find some entry which will throw light on the amount, which is a private account of my own and has nothing to do with the cotton business. Of course the oxen and the scale and plows must be appraised. I will need the oxen, and

if there is any way by which I could acquire them it would suit me to purchase them. Don't you think I ought to be credited something for the deterioration of the carts, of which only one is now left, the wheels of the other having been sold for $18? It is immaterial to me whether I be your debtor or somebody else's; therefore, if it is impossible to make some deal with Mr. Valdés, Mr. Hord, or the Cincinnati Company, in order that my situation may not become more serious and oblige me to sell the property which is the only hope I have for the future, I will do it with pleasure in order to please you, who are greatly entitled to my gratitude. My resources to-day are very limited, and I do not know how I could pay interest at this time, but if I find employment and earn enough to enable me to pay interest, the problem will be solved. Luis has been requested to find out what you wish to do with the cocoanuts which are now piled up; that is, whether or not you want them to be shipped with mine. Believe me, the wild investment made of the note for $5,000 pains me very much, but I was compelled by papa's attitude and did not stop to figure on what I was losing. Yours very truly, Francisco Busó Cabrera."

Although the defendants contend in their answer and Busó Cabrera stated that the property purchased from Valdejuli, even though it may appear under the name of the plaintiff, was purchased by and for the firm, these letters, however, leave no doubt that it was purchased by Vías for himself, for otherwise Busó Cabrera would have given a different answer to the letter in which Vías speaks of the property as his own and not as belonging to the firm, and upon the dissolution of the partnership he would not have consented to Vías' sole possession thereof, nor would he have afterwards arranged the boundary line separating the same from the property belonging to the Succession, as he did according to the evidence introduced at the trial.

It has been proved by the testimony of witness Bartolomé Villegas that, upon the dissolution of the partnership, Busó Cabrera pulled up and removed from Vías' property 100 cocoanut trees, which he transplanted to his own property, the value of which was from $1 to $1.50; and by other testimony it was proven that during the life of the partnership, Busó

Cabrera passed through a very embarrassing economical situation and that on the same day on which he obtained a loan from Natividad Rosado he paid a mortgage to the Banco Territorial.

We are now able to proceed with the examination of the errors which the judgment is said to contain.

During the course of the trial the deposition of the manager of the Banco Territorial y Agrícola with reference to the business transactions and correspondence of Busó Cabrera with the said bank from 1901 to 1904 was admitted as evidence of the plaintiff, and it is alleged that this was an error because the same was not pertinent to the question at issue.

The object of this testimony was to show that the allegation made in the sworn answer, that the amount borrowed by Busó Cabrera from Natividad Rosado had been used in the work of cultivation and was therefore pertinent and admissible, was not true.

Neither did the court commit error in admitting the accounts transcribed by Mr. Janer from his set of books, because the authenticity thereof had been proved, as was also the fact that, because he had retired from business some years since, he had destroyed the books from which he copied them; therefore the primary evidence having disappeared, the secondary evidence was admissible.

Nor did it commit error in refusing to admit the defendant's proposition of the suit withdrawn by Vías, because the object sought was to prove that "Mr. Vías Ochoteco had therein claimed the sum of $1,772.71 in full payment of the account, subject matter of the present litigation," which is a fact acknowledged in the complaint, wherefore it is unnecessary to prove it.

The other questions treated with in the appellant's brief are not assigned as errors committed by the court in violation of any mentioned law, as required by rule 42 of our rules, for which reason we might disregard them because they are

rather considerations of law relative to the constitution of the partnership, the importance of the letter of Busó Cabrera, and as to whether or not the firm of the litigants is dissolved.

There is no question that the partnership was formed by the Succession of Isabel Pérez and by the plaintiff, but as we have before stated, Francisco Busó Cabrera was the only legal representative of said Succession and his acknowledgment of the debt as the result of the liquidation made by him is prejudicial to all the partners whom he represents.

From the moment that he, the manager of the properties, who kept the only book of the firm, acknowledges that he owes $1,207.61, there is no room to doubt that his letter of September 11, 1905, contained the liquidation made by him of the business of the firm. This might not be a true liquidation in the opinion of the plaintiff because he believes that the amount due him is larger; but the fact that he waives the difference in order to accept as good what has been done and acknowledged by the representative of the defendants is no reason why the liquidation made by Busó Cabrera should not be considered as such.

The liquidation made by one partner and accepted by the other is the liquidation of both.

Therefore, Busó Cabrera having been empowered to make the same, as we have already said, and to acknowledge the debit balance which appears from his aforesaid letter, the plaintiff is entitled to recover the amounts allowed him by the judgment, for the reversal of which we find no grounds and which should be affirmed in all its parts.

*Affirmed.*

Chief Justice Hernández and Justice del Toro concurred.

Justices MacLeary and Wolf did not take part in the decision of this case.